IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| SHAWN RANDALL BARNS, SR., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO.: 5:10-CV-426 (MTT) |
| | : | |
| SGT. BUTCH, *et al.* | : | Proceedings Under 42 U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| Defendants. | : | |
| _____ | : | |

### RECOMMENDATION

Before the Court is a Motion for Summary Judgment filed by the remaining Defendants in this case. Doc. 30. Because there are genuine issues of material fact related to Plaintiff's claim of excessive use of force, it is hereby **RECOMMENDED** that the Motion for Summary Judgment be **DENIED**. However, because Defendants have shown that Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit, it is further **RECOMMENDED** that this case be **DISMISSED**.

### DISCUSSION

#### I.   Motion for Summary Judgment

Summary judgment is not warranted in this case because the record includes evidence sufficient to create genuine issues of material fact regarding Plaintiff's excessive force claim. Based on Plaintiff's testimony and other evidence on file, a reasonable jury could conclude that Defendants Hartgrove, Butch, and Allen applied force maliciously and sadistically for the purpose of causing harm or inflicting pain.

A. Factual Background

Plaintiff brings this lawsuit pursuant to 42 U.S.C. § 1983, contending that Defendants Hartgrove, Butch, and Allen used excessive force against him during an incident on December 9, 2009, while he was incarcerated at the Baldwin County Jail.[1] On Defendants' Motion for Summary Judgment, the Court must construe the evidence and draw all inferences in the light most favorable to Plaintiff. Because Plaintiff gave a deposition in this case, the relevant facts are taken primarily from Plaintiff's testimony.

According to Plaintiff, the incident began on December 9, 2009, when he and other inmates were directed to transfer from the E Dorm to the D Dorm. Pl.'s Dep. 17 (Doc. 34). Plaintiff objected to the transfer. Defendant Hartgrove made a comment in response to Plaintiff's objections, and Plaintiff responded in turn by calling Hartgrove a "punk." Id. 18. After securing Plaintiff in his new cell, Hartgrove left to continue locking down the other inmates, then returned some time later to Plaintiff's cell. Id. Hartgrove ordered Plaintiff to lie on the ground, cuffed Plaintiff's hands behind his back, put a knee on Plaintiff's back, and slammed Plaintiff's head onto the concrete floor, saying, "Who is the punk now?" Id. Plaintiff testifies that he cooperated with Hartgrove's commands and did not resist in any way. Id. 20. Defendant Allen was in the cell at the time, but did not touch Plaintiff. Id. 20-21.

Because Plaintiff was bleeding from the right side of his face, Hartgrove and Allen took Plaintiff to the medical unit. Id. 22-23. The officers placed Plaintiff in a medical holding cell and ordered him to remove all his clothing. Id. 24. Left in the cell alone and naked, Plaintiff became upset and began shouting and beating on the door. Id. 24. Some minutes later, the officers returned to the cell to handcuff and shackle Plaintiff again. Id. Plaintiff told the officers that

---

[1] It appears from the record that Plaintiff was a pretrial detainee at the time of the incident.

"they were dead wrong for what they did and that they were going to pay for it." Id. 30. He called the officers names, including "punk" and "bitch." Id. As Plaintiff was going "back and forth" with Allen and Hartgrove, Defendant Butch "came around the door and shot [Plaintiff] with the Taser." Id. 27. The leads from the Taser struck Plaintiff in the side or back. Id. 31.

After the shock from the Taser stopped, Plaintiff found himself on the ground, with blood all over the bed and running down the side of his face. Id. 33. Defendant Allen was on top of Plaintiff, directing him to be still so the officers could remove the probes from his back. Id. 35. Plaintiff states in his testimony that Allen had pushed him down after he was struck by the Taser, causing him to strike his head on the side of a metal bed frame. Id. 44-45. As a result of the fall, Plaintiff sustained a second injury, a gash to the top of his head. Id. 33. Over two hours later, Plaintiff was transported to a local hospital, where he received stiches for both wounds. Id. 36.

Although Defendants have submitted no testimony to contradict Plaintiff's version of events, it appears that they will dispute Plaintiff's description of his own behavior. Defendants submitted a copy of an incident report prepared by Defendant Butch on the day after the use of force. See Doc. 30-2. The incident report is generally consistent with Plaintiff's testimony, except in describing Plaintiff's behavior. The report states that Plaintiff refused verbal commands, threatened officers, kicked the cell door, kicked and fought with officers trying to restrain him, attempted to flood the medical isolation cell, and banged his head and chest while continuing to threaten officers. The report also states that Plaintiff fell and struck his head on the bed as a result of being struck with the Taser. It does not indicate that Defendant Allen pushed Plaintiff. Plaintiff was indicted for felony obstruction of an officer in connection with the incident, and he entered a plea of guilty to the charge on March 17, 2010.

3

B. <u>Eighth or Fourteenth Amendment Claims for Excessive Force</u>

Plaintiff's evidence presents genuine issues of material fact regarding his claim of excessive force against Defendants Hartgrove, Butch, and Allen. Pretrial detainees are protected from the excessive use of force by the due process clause of the Fourteenth Amendment, while convicted prisoners are protected under the cruel and unusual punishment clause of the Eighth Amendment. Under either provision, the analysis is the same. <u>Fennell v. Gilstrap</u>, 559 F.3d 1212, 1216 n. 5 (11th Cir. 2009). For both Fourteenth and Eighth Amendment excessive force claims, the decision "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986). In evaluating a use of force against a prisoner, courts must consider: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; and (3) the extent of the injury inflicted upon the prisoner. <u>Id</u>. at 321. Courts also must be careful to give a "wide range of deference to prison officials acting to preserve discipline and security." <u>Bennett v. Parker</u>, 898 F.2d 1530, 1533 (11th Cir. 1990). In this case, Plaintiff has presented evidence to show that each of the three Defendants acted maliciously and sadistically for the very purpose of causing harm.

A reasonable finder of fact, accepting Plaintiff's testimony as true, could find that Defendant Hartgrove used excessive force when he slammed Plaintiff's head into the floor. Based on Plaintiff's testimony, a jury could draw the reasonable inference that there was no need for an application of force at the time and that Hartgrove acted solely to retaliate against Plaintiff for a prior verbal dispute in which Plaintiff had called Hartgrove a "punk." Plaintiff testified that Hartgrove had left Plaintiff in his new cell after their verbal altercation and returned several

minutes later. When Hartgrove returned, he ordered Plaintiff to lie face down on the floor. Plaintiff complied, and Hartgrove cuffed Plaintiff's hands behind his back. While Plaintiff was lying face down on the concrete with his hands cuffed and Hartgrove's knee in his back, Hartgrove slammed Plaintiff's head into the floor and asked, "Who is the punk now?" It is undisputed that Plaintiff suffered a cut to his face as a result, a cut sufficiently serious to require Plaintiff to be escorted to the medical unit. There is no evidence in the record to indicate that Plaintiff was resisting or causing a disturbance when Hartgrove returned to Plaintiff's cell and ordered him to lie on the floor. Once Plaintiff was restrained on the floor, face down, handcuffed, with an officer on his back, there was no need for a further application of force. The evidence presented by Plaintiff could support a reasonable inference that Hartgrove acted not to restore or maintain discipline, but rather to retaliate against Plaintiff for his previous disrespectful behavior.

Plaintiff also has presented evidence to support his claim that Defendant Butch acted sadistically and maliciously in using the Taser against Plaintiff. Again, the circumstances described in Plaintiff's deposition indicate that Plaintiff was completely restrained and not posing a threat to anyone when Butch acted. Plaintiff's testimony is that he was naked, handcuffed, and shackled, in a small isolation cell, with Hartgrove and Allen on either side of him. Although Plaintiff admits that he was "going back and forth" with the officers verbally, there is no indication that Plaintiff posed any threat of harm to the officers or to other inmates. In such circumstances, a reasonable jury could conclude that Butch used the Taser to inflict pain, rather than out of a legitimate need to maintain or restore discipline.

If the finder of fact accepts as true Plaintiff's testimony that Defendant Allen pushed Plaintiff after Butch used the Taser, the finder of fact likewise could conclude that Allen acted

5

for the purpose of causing harm. When Allen allegedly pushed Plaintiff, Plaintiff was in an isolation cell, naked, restrained, and immobilized by the electric current from the leads of the Taser. In such circumstances, there is nothing to indicate that any use of force was warranted. It is undisputed that Plaintiff suffered a second injury, to the top of his head, as a result of falling and striking his head against a metal bed frame in the confined space of the isolation cell.

    1.    <u>Physical Injury Rule</u>

Defendants contend that they are entitled to summary judgment because Plaintiff has failed to establish a "substantial physical injury." The Prison Litigation Reform Act (PLRA) provides an affirmative defense prohibiting prisoners from bringing claims for mental or emotional injury suffered while in custody without a prior showing of physical injury. 42 U.S.C. § 1997e(e). <u>See</u> <u>Douglas v. Yates</u>, 535 F.3d 1316, 1320 (11th Cir. 2008) (absence of physical injury is an affirmative defense to claims for mental or emotional injury). Nothing in Section 1997e(e) indicates that a physical injury must be "substantial" to support a claim.

In this case, it is all but undisputed that Plaintiff suffered two physical injuries as a result of the use of force by Defendants. The evidence shows that these injuries required Plaintiff to be transported to a hospital emergency room for treatment. At the emergency room, Plaintiff received stitches for both wounds. During the course of Plaintiff's deposition, more than two years after the events in question in this case, Defendants' attorney indicated that he was able to observe a scar "about an inch and half" long on the left side of the top of Plaintiff's head. Pl.'s Dep. 6 (Doc. 34). These two wounds are "physical injuries" sufficient to permit Plaintiff to bring a claim within the requirements of 42 U.S.C. § 1997e(e).

2. *De Minimis* Force

Defendants also contend that they are entitled to summary judgment because Plaintiff's injuries were *de minimis*. This argument misconstrues Supreme Court precedent regarding Eighth or Fourteenth Amendment excessive force claims. The Supreme Court has expressly rejected "the notion that 'significant injury' is a threshold requirement for stating an excessive force claim." Wilkins v. Gaddy, 559 U.S. 34, ___, 130 S.Ct. 1175, 1178 (2010). In determining whether a use of force is *de minimis*, courts must focus on the force applied, and not on the injury sustained:

> When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today.

Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations omitted). The extent of the injury is relevant instead as "one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." Hudson, 503 U.S. at 7, quoting Whitley, 475 U.S. at 321. In this case, a reasonable finder of fact could determine that no use of force could plausibly have been thought necessary. A use of force sufficient to cause gashes to the face and head requiring stitches is more than a mere push or shove, and, when no force at all was called for, such force could be found to have been sadistic and malicious.

3. Heck v. Humphrey

Defendants next contend that they are entitled to summary judgment because Plaintiff's claims are barred under the doctrine of Heck v. Humphrey, 512 U.S. 477 (1994) because of Plaintiff's subsequent guilty plea to felony obstruction of a law enforcement officer. In Heck, the

Supreme Court held that a prisoner cannot bring suit under Section 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." Id. at 487. Defendants have not shown, however, that Plaintiff's claims necessarily imply the invalidity of his guilty plea and sentence on the obstruction charge. The indictment in the record merely states that Plaintiff "did . . . unlawfully and knowingly and willfully obstruct Willie Hartgrove, a law enforcement officer in the lawful discharge of his official duties by offering and doing violence to said officer." Defs.' Ex. 1 (Doc. 30-1). Nothing in the indictment indicates how or when Plaintiff offered or did violence to Hartgrove. The incident report submitted by Defendants, though not likely to be admissible evidence and not necessarily probative of the nature of Plaintiff's plea, also offers scant detail to support the charge. At most, it states that Plaintiff was "kicking and fighting with officers" when Hartgrove and other officers returned to his cell in D dorm. The fact that Plaintiff may have offered or done violence to Hartgrove in some unspecified way at some unspecified time, or even that Plaintiff was "kicking and fighting with officers" when they returned to his cell, does not necessarily imply that Hartgrove was justified in slamming Plaintiff's head onto the concrete floor after Plaintiff was restrained and subdued. A reasonable jury could find in Plaintiff's favor without challenging the validity of his conviction.[2]

4.   Qualified Immunity

Defendants further contend that they are entitled to qualified immunity as to claims against them in their individual capacities. The Eleventh Circuit has held, however, that the defense of qualified immunity is precluded in cases where a claim of excessive force has been

---

[2] This case is directly comparable to Hadley v. Gutierrez, 526 F.3d 1324, 1331 (11th Cir. 2008), in which the Court held that a guilty plea and conviction for resisting arrest did not bar an excessive force claim, due to questions about the sequence of events. As the Court noted, given the general nature of the charge, it was "theoretically possible that [the plaintiff] was punched then resisted, or even that he resisted first, then was punched after he stopped resisting." Id.

8

sufficiently alleged. Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002), citing Hudson v. McMillian, 503 U.S. 1 (1992) and Whitley v. Albers, 475 U.S. 312 (1986). Because Plaintiff has presented sufficient evidence to support a finding that Defendants' actions were malicious and sadistic, Defendants are not protected by qualified immunity. Even so, Defendants are protected by Eleventh Amendment immunity to the extent they are sued in their official capacities. See Manders v. Lee, 338 F.3d 1304, 1308-09 (11th Cir. 2003).

## II.    Exhaustion of Administrative Remedies

Although there are genuine issues of material fact that preclude summary judgment in this case, Defendants have shown that this case should be dismissed due to Plaintiff's failure to exhaust his administrative remedies. Because exhaustion is "a matter in abatement and not generally an adjudication on the merits," it is properly the subject of dismissal rather than of summary judgment. Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008). As such, a motion based on failure to exhaust should be treated as a motion to dismiss even if raised in the context of a motion for summary judgment. Id. As with other matters in abatement, such as jurisdiction, venue, and service of process, in considering exhaustion "it is proper for the judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

The PLRA requires an incarcerated plaintiff to exhaust his available administrative remedies before bringing any action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. Booth v. Churner, 532 U.S. 731, 734 (2001); Alexander v. Hawk, 159 F.3d 1321, 1326 (11th Cir. 1998). Moreover, the exhaustion requirement requires

proper exhaustion in compliance with the administrative process, and claims that are not properly exhausted must be dismissed. Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999). The Eleventh Circuit has made it clear that the exhaustion of available administrative remedies is mandatory, even when the administrative procedures set forth by the prison are futile or inadequate. Alexander, 159 F.3d at 1326. In order to satisfy the exhaustion requirement, an inmate must fully pursue all available administrative remedies. Harper, 179 F.3d at 1312.

Where a motion to dismiss is based on the affirmative defense of failure to exhaust administrative remedies, the review of the motion involves a two-step process. See Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008). The court first looks to the factual allegations in the motion seeking dismissal as well as those in the plaintiff's response. Id. at 1082. If they conflict, the court takes the plaintiff's version of the facts as true. Id. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." Id. If the complaint is not subject to dismissal under the plaintiff's version of the facts, the court must proceed to the second step, making specific findings of fact to resolve the disputed factual issues related to exhaustion. Id. At the second step, it is the defendant's burden to prove that the plaintiff failed to exhaust his available administrative remedies. Id.

In this case, there is a dispute of fact, but Defendants have met their burden of proving that Plaintiff failed to exhaust his administrative remedies. Defendants have submitted the affidavit of Jeff Petty, the Jail Administrator for the Baldwin County Jail. Attached to this affidavit is a portion of the Jail's inmate handbook that outlines a simple, one-step process for pursuing administrative remedies. Inmates are required to file a grievance within five days of the date of the incident giving rise to the complaint, using an inmate grievance form obtained from a

detention officer. Petty Aff. (Doc. 30-2). Petty avers that he retains all grievances in an inmate grievance file. Petty Aff. ¶ 6. He further states that his review of the file showed that Plaintiff did not file an inmate grievance related to the December 2009 incident at issue here. Id.

Plaintiff's Complaint confirms Petty's testimony that Plaintiff did not file an inmate grievance related to this incident. In response to Question 6(c) on the Complaint – "Did you present your complaint(s) herein to the institution as a grievance?" – Plaintiff marked the box "No." Compl. (Doc. 1). In response to Question 6(d), Plaintiff explained that he did not file a grievance because Plaintiff "was put in 'Fear of Reprisal' with 'Imminent Danger.'" Id.

At his deposition, however, Plaintiff insisted that he filed a grievance when he returned from the hospital, within a week of the incident, but he was transferred out of the Baldwin County Jail before the grievance was answered. Pl.'s Dep. 9 (Doc. 34). He explained that a fellow inmate drafted his complaint for him. Id. 8. He further testified that he kept a copy of the grievance for himself. Id. 10. Plaintiff stated that he attached a copy of the grievance to his response to the motion for summary judgment and also sent a copy to counsel for Defendants. Id. 10-11. The Court's records do not show that any copy of the grievance has been filed. Plaintiff did not have a copy of the grievance with him at the deposition, although he acknowledged that he had brought all of his case materials with him. Id. 11-12.

The weight of the evidence supports a finding that Plaintiff failed to file an administrative grievance prior to filing the instant lawsuit. The records of the Baldwin County Jail are confirmed by Plaintiff's own admission, in his Complaint, that he failed to file a grievance. Although Plaintiff testified, two years after the fact, that he had filed a grievance and kept a copy of it, he was unable to locate a copy of the grievance among his own materials. In light of this

evidence, Plaintiff's later testimony is not credible, and it must be concluded that Plaintiff failed to pursue or exhaust his available administrative remedies prior to filing suit, and therefore, his remaining claims must be dismissed pursuant to 42 U.S.C. § 1997e(a).

## CONCLUSION

Because there are genuine issues of material fact that preclude summary judgment, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 30) be **DENIED**. Because Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit, however, it is **FURTHER RECOMMENDED** that this case be **DISMISSED**. Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

SO **RECOMMENDED**, this 22nd day of February, 2013.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge